McCraw *v.* Simpson.

4-6609                                          158 S. W. 2d 655

Opinion delivered February 9, 1942.

---

*George W. Dodd,* for appellant.

*Roy Frye* and *Amelia Patterson,* for appellee.

HOLT, J. Hugh Simpson, father of appellant and husband of Mary B. Simpson, appellee, died testate August 13, 1941. He was married to appellee September 20, 1920, in Fort Smith, Sebastian county, Arkansas. Following this marriage they lived in Fort Smith until March 13, 1930, when they moved into a country home which they had built in Sequoyah county, Oklahoma. Hugh Simpson and his wife occupied this home until his death in 1941. Appellee continues to reside in this home. This home of Mr. and Mrs. Simpson was erected on a large farm which Hugh Simpson owned, and after they moved to it from Fort Smith the great preponderance of the testimony shows that they had no other residence, and that their permanent residence and domicile were in Sequoyah county, Oklahoma. Hugh Simpson paid his taxes and voted in Oklahoma. At the time of his death, outside of a balance in a bank account in the Merchants National Bank of Fort Smith, Arkansas, and a burial lot, of the approximate value of $500 in Fort Smith, he had no interests in Arkansas. He was buried in Arkansas. At the time of his death there were no debts due Hugh Simpson from anyone living in Arkansas, and he owed no one in Arkansas.

On April 23, 1926, Hugh Simpson, while a resident of Fort Smith, Arkansas, executed his will, which he

deposited with the Merchants National Bank of Fort Smith, where it remained until his death. The execution, delivery and identity of the will are not questioned.

The first paragraph of the will is as follows: "I declare my residence to be the city of Fort Smith, in Sebastian county, state of Arkansas, and declare myself to be a citizen and *bona fide* resident of the state of Arkansas."

On August 28, 1941, appellant, Penelope McCraw, filed petition in the Sebastian probate court to probate Hugh Simpson's will. Appellee, Mary B. Simpson, filed protest questioning the jurisdiction of the court. Upon a hearing the court found "that Hugh Simpson, at the time of his death on the 13th day of August, 1941, was an actual and *bona fide* resident of Sequoyah county, Oklahoma. Therefore, it is ordered by the court that the petition to probate the last will and testament of Hugh Simpson, deceased, as a domiciliary will, be and the same is hereby denied, and said petition is hereby ordered dismissed." The court then directed the Sebastian probate clerk to forward the original will to the court clerk of Sequoyah county, Oklahoma. Appellant brings this appeal.

The sole question for determination here (says appellant) is: "Could the will be probated in the first instance in the Arkansas court?" It is our view that it could not be for the reason that the great preponderance of the evidence reflects that, while Hugh Simpson was a resident of Arkansas at the time he executed his will, at the time of his death, he had been, not only a resident of, but had had his domicile in, Sequoyah county, Oklahoma, for approximately ten years.

The rule seems to be well settled that a will must be filed for original probate where the testator resided at the time of his death, and it is our view that the chancellor was correct in so holding.

Under § 14534, Pope's Digest of the Statutes of Arkansas, provision is made to admit the will of a non-resident to probate in Arkansas in an ancillary proceeding, and this may be done in the instant case. We find

no Arkansas statute allowing original probate of the will of a non-resident.

Appellant's contention that the will in question should be admitted to probate as a domiciliary will in the Sebastian probate court, because of the testator's declaration in the first paragraph of the will that his residence was in the city of Fort Smith, Sebastian county, Arkansas, and that he was a citizen and *bona fide* resident of Arkansas, we think is untenable.

The testator changed his residence and domicile after making his will. Assertions of residence made in a will cannot confer jurisdiction where such assertions are made in conflict with the facts.

In the case of *Texas* v. *Florida,* 306 U. S. 398, 59 S. Ct. 563, 83 L. Ed. 817, 121 A. L. R. 1179, the Supreme Court of the United States said: "One cannot elect to make his home in one place in point of interest and attachment and for the general purpose of life, and in another, where in fact he had no residence, for the purpose of taxation. . . . While one's statements may supply evidence of the intention requisite to establish domicile at a given place of residence, they cannot supply the fact of residence there. . . . When one intends the facts to which the law attaches consequences, he must abide the consequences, whether intended or not."

In *Seifert* v. *Seifert,* 82 Okla. 230, 200 Pac. 243, the Supreme Court of that state said:

"Under the laws of this state the county court is not vested with jurisdiction to allow the ancillary probate of a domiciliary will based on a foreign probate. In the absence of a law authorizing such jurisdiction it cannot be conferred by agreement.

"The appearance entered by George W. Seifert amounts only to a waiver of process, but even if it did ask the court to take jurisdiction of the ancillary probate, it would not confer jurisdiction. It is well settled that parties cannot by agreement confer jurisdiction. If they could, then parties might agree that a justice of the peace could try the title to real estate, but no one would

contend that this conferred such jurisdiction on the justice of the peace. . . . The county court of Beckham county did not have jurisdiction, and it could not be conferred by agreement. Its proceedings in ancillary probate and judgment were void, and a void judgment never creates an estoppel.''

In re *Leidenger's Estate,* 173 Misc. 808, 18 N. Y. S. 2d 684, the court there said:

''The facts disclosed here do not present the situation where a person with two residences assumes to fix one as his domicile in law. It is rather an attempt to fix domicile in a place where a person had no residence at all. What was said in Matter of Trowbridge's Estate, 266 N. Y. 283, 194 N. E. 756, aptly characterizes Mr. Leidenger's bare assertion of New Jersey domicile: 'These . . . were all parts of an attempt to vindicate an opinion that a man may retain an abandoned home as a technical domicile in law after he has elsewhere established another abode in which he expects to live indefinitely.'

'' 'I have elsewhere commented on the force of assertions of domicile made in a will, where such assertions are in conflict with the real facts (Matter of Wendel's Estate, 144 Misc. 467, 259 N. Y. S. 260), and there pointed out that similar words of description in wills, inconsistent with the evidence in the case, have been frequently disregarded by the court.'

''Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile.''

''The principle of law is well established that where one wholly relinquishes his residence in one place and acquires a home in another place, he is powerless to alter the legal consequences of his action.''

We conclude, therefore, that the great preponderance of the testimony fully establishes that Hugh Simpson, at the time of his death and since March 13, 1930, was an actual and *bona fide* resident of, and domiciled in, Sequoyah county, Oklahoma, and exercised all the rights of citizenship there, and, irrespective of the

declarations in his will, *supra,* he was bound, under the law, to submit his will for original probate in Sequoyah county, Oklahoma.

As indicated, this procedure will not deny to appellant the right to admit the will for probate in Sebastian county, Arkansas, in an ancillary proceeding, as provided in § 14534, *supra.*

Finding no error, the decree is affirmed.