McPherson *v.* McKay, Administrator.

4-7113                                              172 S. W. 2d 911

Opinion delivered July 5, 1943.

1136

*Ned A. Stewart*, for appellant.

*McKay & McKay* and *McReynolds & Flanigan*, for appellee.

Sᴍɪᴛʜ, J.   On September 18, 1936, Eleanor M. Hope was a resident of Belton, Cass county, Missouri, on which day she executed a certain paper writing as and for her last will and testament, which said will meets all the requirements, in its execution, necessary to be a valid will of lands in this state.

Subsequent to the date of the execution of this will, the testatrix removed to Shreveport, in the state of Louisiana, of which city she was a resident at the time of her death on August 12, 1939.

On September 15, 1942, the will was offered for original probate in the Columbia county probate court. It is alleged, and it is not disputed, that the bulk of the estate owned by the testatrix and devised by her consisted of real estate in Columbia county, Arkansas, and from the order of the court admitting this will to probate is this appeal.

For the reversal of this order appellant says "the sole and only question involved on this appeal is whether the will of a nonresident can be probated in the first

instance in the Arkansas court,'' and his insistence is that the courts of this state do not have that jurisdiction.

To sustain this contention appellant cites and relies upon the opinion in the case of *McCraw* v. *Simpson*, 203 Ark. 763, 158 S. W. 2d 655. In that ·case it was held, to quote a headnote, that: ''A will must be filed for original probate where the testator resided at the time of his death.'' This declaration of law must be read in connection with the facts of that case to which it applied.

There, as the opinion recites, the testator had been, but had ceased to be, a citizen of this state and had become a resident and qualified elector of the state of Oklahoma, in which state he exercised his right of suffrage. He owned a large farm in Oklahoma on which he built a residence which became and was his homestead at the time of his death, and he had no other residence. There were no debts due the testator from anyone living in Arkansas, and he ·owed no debts to anyone in this state. He had an account with a bank in this state and there was a balance to his credit in this account at the time of his death. He owned a lot in the cemetery in which he was buried in this state, but he had no property of any other kind in this state. Under this state of facts, we held there was no law which authorized the original probate of the will of the nonresident in this state.

The difference in the facts between that case and this renders the holding in that case inapplicable here. In this case the testatrix is a nonresident of the state, but she owns real estate in this state, the bulk of which lies in Columbia county. The will was, therefore, subject to original .probate in Columbia county under the authority of § 14529, Pope's Digest, which reads as follows: ''The manner of proving wills and contesting their probate shall be as follows: Wills shall be proved before and admitted to record by the court of probate of the county of the testator's residence. If he had no known place of residence in this state, and land is devised, then in the county where the land, or the greater part thereof,

lies. If no land is devised, then in the county where he died, or that wherein his estate, or the greater part thereof, shall lie, or where there may be any debt or demand owing to him. Civil Code, § 513, subdiv. 1.''

This view comports with the construction of the statute just quoted in the case of *State, ex rel.,* v. *Wright,* 194 Ark. 652, 109 S. W. 2d 123. In that case, Hickman died in Hot Springs, Arkansas. A writing purporting to be his last will and testament recited that he was a resident of Hot Springs, Arkansas. This will was admitted to original probate in the state of Texas. Later, a suit was filed on the relation of the Attorney General of this state in which it was alleged that the testator was a resident of this state and that he left no widow or heirs-at-law entitled to inherit the estate, and it was alleged that the estate had escheated to the state, and that the probate of the will in Texas was unauthorized and void.

A statute of the state of Texas was there quoted which was said to be somewhat similar to § 10511, Crawford & Moses' Digest, (now § 14529, Pope's Digest), and in construing this section of our statute, said to be somewhat similar to the Texas statute, it was there said: ''Section 10511, Crawford & Moses' Digest, provides that wills may be admitted to probate in the county of the testator's residence, but if he had no known place of residence in this state, and land is devised, then in the county where the land, or the greater part thereof, lies. But if no land is devised, then in the county where he died, or that wherein his estate, or the greater part thereof, shall lie, or where there may be any debt or demand owing to him. So, it would appear under our statute that the will of a person, known to be a nonresident of this state might be probated in any county in this state wherein his estate, or the greater part thereof, shall lie, and this is similar to the above provision of the Texas statute.''

The necessary effect of this holding, indeed the express holding, is that the will of a nonresident of this

state may have original probate in this state, if the testator owned property in this state which might be the subject of administration in this state, or where there was a debt or demand due the testator which required administration to collect.

In the case of *Parnell* v. *Thompson*, 33 L. R. A., N. S., 658, (81 Kan. 119, 105 Pac. 502), there appears an extended note citing many cases upon the "jurisdiction to admit to probate will not probated at testator's domicile," and these cases are summarized by the annotator in the following statement: "With the exception of two cases, both of which are based upon a construction of local statutes, it is uniformly held that where assets are found within a state, the courts of probate of that state have jurisdiction to grant original probate of a foreign will. In some states such jurisdiction is expressly given by statutes, which are, however, characterized by the courts as merely declaratory of the common law."

At § 366 of the chapter on Wills, 28 R. C. L. 365, it is said that: "Since original jurisdiction as to the probate of a will, as an almost universal rule, rests solely in the courts of the testator's last domicile, it follows that a will cannot properly be probated elsewhere unless there are assets of the estate in the jurisdiction, but it is almost uniformly held that where assets are found within a state, the courts of probate of that state have jurisdiction to grant original probate of a foreign will. In some states such jurisdiction is expressly given by statute, but such statutes have been characterized by the courts as merely declaratory of the common law."

At § 469 of the American Law Institute's Restatement of the Law, Conflict of Laws, p. 569, appears this statement: "The will of a deceased person can be admitted to probate in a competent court of any state in which an administrator could have been appointed had the decedent died intestate," and further that: "probate in a state other than at the domicile can be had although

the will has not been admitted to probate in the state of the decedent's domicile. But a court in its discretion will ordinarily postpone action in so far as the will concerns movables until the court at the domicile has acted, if proceedings in the domicile for probate are pending at the time the application for probate is made in the other state.''

The rationale of the decisions in the case of *State, ex rel.,* v. *Wright, supra,* and *McCraw* v. *Simpson, supra,* is this: Section 14529, Pope's Digest, authorizes the original probate in this state of the will of a nonresident where the nonresident owns property in this state, which is the subject of probate administration, or has a debt or demand owing to him which requires administration upon the estate to enforce. But, unless the nonresident has land in this state or debt or demand owing to him the will of the nonresident is not subject to probate here.

In the instant case the testatrix owned land in this state. In the McCraw case the testator had a bank balance in this state, but its situs was that of the depositor, this upon the theory that *mobilia sequenter personam.*

The testator in the McCraw case owned a burial lot in a cemetery in this state, but this was not property which could ever have been assets in an administrator's hands. There could be no administration for the purpose solely of taking possession of a burial lot. It would never be assets in an administrator's hands for the purpose of paying debts and, if the title to the lot was involved, this would be a question which the heirs, and not an administrator, would prosecute or defend.

The headnote to the case of *Jones* v. *Jones,* 107 Ark. 402, 155 S. W. 117, reads as follows: ''An administrator can not stand for or represent the heirs when the title to land is involved, nor is he entitled to the possession of lands unless they are needed to pay debts of the deceased.'' In the body of that opinion Chief Justice Mc-Culloch quoted from the case of *Chowning* v. *Stanfield,* 49 Ark. 87, 4 S. W. 276, as follows: '' 'The administra-

tor's right to the possession of lands as assets for the purpose of administration is exclusive of that of the heirs,' said this court, speaking through Chief Justice Cockrill, in *Chowning* v. *Stanfield*, 49 Ark. 87, 4 S. W. 276, 'and he can maintain ejectment to gain the possession, but he is not concerned with the title, except in so far as it affects his possessory right, and he is not authorized to represent the heirs or to stand for them when the title is in question. They are indispensable parties in a controversy where relief is asked which affects the title.' 'And,' said this court in the same case, 'an administrator is not entitled to the possession of lands unless they are needed to pay the intestate's debts'.'' A burial lot is, of course, real estate which may be conveyed, or inherited, but it is not land in the sense in which that word is employed in § 14529, Pope's Digest, *supra.*

At § 24, Vol. 1, Cyclopedia of Real Property Law, of which Paul Jones, the author of Arkansas Titles to Real Property, is the Editor-in-Chief, it is said: ''Burial Lots.—As a rule, the purchaser of a cemetery lot takes no title to the soil. The grant is in the nature of a license or privilege to make interments in the plot described exclusive of all others, so long as the ground shall remain in such use. Such right is, however, real property. It may be sold or transferred to others, if nothing in the grant prevents, and it is treated generally as an incorporeal hereditament. In some cases the right of interment has been held to be an easement in the land.''

At § 26 of the chapter on Cemeteries, 14 C. J. S. 86, it is said: ''A burial lot is regarded as property in which title may in most cases descend to heirs or lineal descendants. It does not pass under a general residuary clause in a will, but descends to the heirs as intestate property. An heir to whom a burial lot descends takes it subject to all the conditions under which the ancestor held it.''

Inasmuch as the testator in the McCraw case, *supra,* had no land in this state, within the meaning of § 14529

1142

of Pope's Digest, it was properly held in that case that there was no law which authorized the original probate of his will in this state.

It follows from the views here expressed that the will of Mrs. Eleanor M. Hope was properly admitted for probate in this state, and that order is accordingly affirmed.