IN THE MATTER OF THE ADOPTION OF Bradley
Jason POLLOCK

87-36                                                    736 S.W.2d 6

Supreme Court of Arkansas
Opinion delivered September 21, 1987
[Rehearing denied October 26, 1987.*]

Purtle, J., would grant rehearing.

*Bob Frazier*, for appellant.

No response.

Tom Glaze, Justice. In this appeal, this court is presented its first opportunity to interpret Arkansas's Revised Uniform Adoption Act [Ark. Stat. Ann. §§ 56-201—221 (Supp. 1985)] to determine whether, under that Act, this state's probate courts are empowered to grant an adoption when neither the adopting parents nor the child sought to be adopted are residents of this state. The trial court concluded that, under such circumstances, it had no jurisdiction and dismissed the adoption proceedings. Appellants, Martin J. and Sandra Gail Pollock, challenge the trial court's decision here, arguing the lower court did have authority to grant their adoption of the infant child, Bradley. We hold the trial court was correct, and, therefore, affirm.

The facts are undisputed. The Pollocks are residents of Marlboro, New Jersey. After having adopted one child, a daughter, Erica, from a private adoption agency in Pennsylvania, in 1983, the Pollocks decided that Erica should not be reared alone, so they looked to adopt another child. Because they were unable to obtain a second child from the agency they previously had employed, the Pollocks called some friends' attorney who, in turn, had a Richard Gettleman telephone the Pollocks. Gettleman gave the Pollocks some names of people whom he helped with adoptions in the New York, New Jersey and Pennsylvania areas, and after calling and obtaining some good, as well as bad, stories from those references, the Pollocks opted to request

Gettleman's assistance in finding them a child to adopt. Gettleman subsequently arranged for such an adoption, which, he directed the Pollocks, was to take place in Malvern, Arkansas. The mother, Jenay, was (and is) a resident of the State of Washington, but she came to Malvern for the delivery of her child, Bradley. After Bradley's birth, Jenay executed a consent for his adoption, and she then returned to Washington. The Pollocks then petitioned for both guardianship and the adoption of Bradley in Malvern, Hot Spring County, Arkansas, and the Hot Spring County Probate Court initially obliged the Pollocks by granting temporary orders in each proceeding. The court later extended the guardianship order, but dismissed the adoption proceeding, which led to this appeal. The Pollocks testified they understood Gettleman had arranged for this adoption to be consummated in Arkansas because of the legal difficulties to obtain adoptions in other jurisdictions more convenient to the parties.

The Pollocks' argument that the Arkansas court has jurisdiction to order the adoption is based primarily upon their interpretation of § 56-205(a). That provision provides that adoption proceedings must be brought in the court for the place in which, at the time of filing or granting the petition, the petitioner or the individual to be adopted resides or in which the agency having the care, custody or control of the minor is located.

The Pollocks contend § 56-205(a) is not a jurisdictional requirement—as the trial judge held below—but rather only a venue requirement which the parties could, and did, willingly waive. Such an interpretation wholly ignores the intent of the framers of our Revised Uniform Adoption Act (RUAA). One need only refer to the Commissioner's Note to § 4 [the same as our § 56-205(a)] of the RUAA which in relevant part reads:

> Jurisdiction is based on residence of either the person seeking to adopt the child or the residence of the child at the time of adoption.

In the instant case, the Pollocks in no way contend that they, Bradley or Bradley's mother have ever resided in Arkansas. To the contrary, the Pollocks specifically concede they reside in New Jersey and Bradley's mother in Washington. As was adroitly pointed out by the trial judge, the parties' only purpose for

entering Arkansas was this adoption, and, afterwards, they most likely will have no reason to return to the state again.

In adopting § 4 of the RUAA without variation as a part of Arkansas's adoption law, the General Assembly's intent, in view of the RUAA's commissioner's note, is clear that jurisdiction to obtain an adoption in Arkansas is based upon the residence of either the person seeking the adoption or the child sought to be adopted. The General Assembly's intent in this respect is fortified further by noting the relevant and comparable provisions of the Uniform Adoption Act (UAA), which, if it had been enacted by the General Assembly, would have permitted the adoption of a child who was merely present in, and not a resident of, this state. *See* Uniform Adoption Act, § 4, U.L.A. (1957); *see also* § 2 of the same Act (any child present within this state at the time the petition for adoption is filed, irrespective of birth or place of residence may be adopted). Even though the framers of the UAA provided no residency requirement for the adopted child as the basis of its adoption, they did restrict jurisdiction of the state to grant adoptions to where the petitioners, adoptive parents, reside. *See* Commissioner's Note to Uniform Adoption Act § 4, 9 U.L.A. 30 (1957). In so providing, the authors of the UAA, in their commissioner's note, said:

> The reason for so limiting jurisdiction is to place the emphasis on getting the best parents for the child. It is believed that the courts of the state where the parents reside will be better able to judge the adoptive home and adoptive parents than a court in a state foreign to the new parents.

In adopting the RUAA instead of the UAA, the Arkansas General Assembly allowed more flexibility in the state's adoption procedure by not restricting Arkansas's jurisdiction in such matters only to when and where the prospective or adoptive parents reside in this state. As we earlier noted, the state extended jurisdiction under § 56-205(a) to award an adoption also in situations when and where (1) the child to be adopted resides in Arkansas or (2) an agency in this state has the care, custody or control of the child. These two added situations to when this state obtains jurisdiction of adoption proceedings still insures—as does the UAA—our court's opportunity to survey and judge the best

interests and placement of the child to be adopted. At the same time, such jurisdictional requirements reflect the modern tendency for the state to seek greater assurance of protection to the child. To this effect, *see generally* R. Leflar, *American Conflicts Law* § 239 (1977). In this same vein, the trial judge in the instant case voiced concern over the prospects of when a child is born with a defect, left in this state and the biological mother and adoptive parents—residents of other states—abandon any further interest in the child or Arkansas adoption proceeding. Obviously, the General Assembly, in enacting § 56-205(a), widely has assured this state has a genuine interest or contact with at least one of the parties (adoptive parents, adopted child or local agency that has care and control of the child) involved before an adoption matter is filed or granted within its borders. Restricting the state's jurisdiction to such instances, the General Assembly has placed our courts in a position to better ensure that the adopted child's best interests are achieved.

In conclusion, we note the Pollocks' argument that, assuming the trial court had no jurisdiction, it had otherwise acquired jurisdiction when it appointed the Pollocks as temporary guardians of Bradley. Upon such appointment, the Pollocks reason, citing *In re Adoption of Johnson*, 399 Pa. 624, 161 A.2d 358 (1960), that Bradley became a ward of the court, and, therefore a domicile of Hot Spring County, Arkansas. The Pennsylvania case cited is clearly distinguishable from the situation at hand, since there the child was a resident of that state and the question was simply which county in the state could decree the adoption. In further response to the Pollocks' second argument, we point out that the Pollocks failed to raise such a theory below, and, therefore, we are in no position to address it on appeal. Even had this point been raised below, a serious question exists, based upon the record before us, concerning whether the trial court's temporary guardianship order was actually valid. *See* Ark. Stat. Ann. §§ 57-826—827 (Supp. 1985).

Because we agree with the trial court's holding it has no jurisdiction in this cause, we affirm.

HOLT, C.J., and HAYS and NEWBERN, JJ., concur.

PURTLE, J., dissents.

DAVID NEWBERN, Justice, concurring. If the record in this case had shown that the child was present in Arkansas at the time the petition for adoption was filed, I would have concluded that the court had jurisdiction to enter an adoption decree. While it is true that the commissioners' note referred to in the majority opinion discusses § 4 of the R.U.A.A., which is the same as Ark. Stat. Ann. § 56-205 (Supp. 1985), as if it were a jurisdiction granting statute, the caption given to it in Uniform Laws Annotated, and given it by the publishers of our statute, begins with the word "venue," and "jurisdiction" is not mentioned in either the caption or the body of the statute. 9 U.L.A., Revised Uniform Adoption Act, § 4, p. 21 (1979). It is, at best, ambiguous.

The majority opinion suggests that either the adopting or natural parent must reside in this state, or that an Arkansas agency must have custody of the individual to be adopted, in order for our courts to have jurisdiction to grant an adoption. I believe that if we are to construe § 56-205 as a jurisdiction granting statute, then "residence of the individual to be adopted" must also be a basis for jurisdiction, as those words also appear in the statute. I do not know that a child born in Arkansas and present at the time the petition is filed is not a "resident" for this purpose.

If the ideas expressed in the majority opinion are to be law in this state, the general assembly should, after considering the laudable policies expressed in the majority opinion, adopt them and spell out the bases of jurisdiction for adoption. To my knowledge they have not yet done so.

HOLT, C.J., and HAYS, J., join.

JOHN I. PURTLE, Justice, dissenting. Adoptions do not happen by accident. They are always prearranged. Therefore, I find nothing improper or illegal about arranging for an adoption in Arkansas, especially when the child is born in Arkansas as this child was.

It is true that the adoptive parents were from out of state. However, this fact alone should and does not prevent the proper agencies and courts from making a determination as to the suitability of the adoptive parents. In fact, the trial judge in this matter stated: "Mr. and Mrs. ___, I, as a judge, will officially find

that you are very good, decent, and honorable people, and I find that you would give this child a good home, and be good parents . . . ." Had there been any doubt in the mind of the judge as to the suitability of these parents for the adoption, he could easily have referred the matter to Children and Family Services which would have in turn contacted the proper agency in New Jersey.

The mother signed an affidavit on February 11, 1986, that she was the mother of the child and that she agreed to the adoption. Part of her statement or affidavit, reads as follows:

> I, [mother's name], declare that I am the mother of infant _____, a minor child, who was born on the 15th day of December, 1985, in Hot Spring, County, Arkansas, and that I am a legal resident of Hot Spring County, Arkansas.

The child had no voice in determining the site of his birth. He came into this life in Hot Spring County, Arkansas. Being a natural person he had to be a resident of somewhere. Having never been in Washington or New Jersey, it is logical to assume that he was a resident of Arkansas at the time of his birth and at the time the Hot Spring County Probate Court granted the temporary orders for both the guardianship and adoption of Bradley.

The Arkansas statute in question, Ark. Stat. Ann. § 56-205(a) (Supp. 1985), states in part: "Proceedings for adoption must be brought in the court for the place in which, *at the time of filing* or granting *the petition*, the petitioner or the individual to be adopted resides. . . ." (Emphasis added).

I am in disagreement with the majority's statement of the issue. The opinion states: "In this appeal, this court is presented its first opportunity to interpret Arkansas' Revised Uniform Adoption Act [cite omitted] to determine whether, under that Act, this state's probate courts are empowered to grant an adoption when neither the adopting parents nor the child sought to be adopted are residents of this state." As I see it, the question we should consider is whether our courts have the power to grant adoptions when either the child or one of the other parties was a resident of the state of Arkansas "at the time of the filing or granting of the petition."

Clearly, our courts had the authority to grant the initial temporary orders in this matter because the child was, unquestionably, a resident of this state at the time the first petitions were filed. Implicit in the majority opinion is the assumption that the Hot Spring Probate Court lost its authority over the guardianship and adoption of this child by the court's own action granting the prospective adoptive parents permission to take the child out of the state. The majority, moreover, questions the validity of the probate court's temporary guardianship order, citing Ark. Stat. Ann. §§ 57-826 and 827 (Supp. 1985). These two statutes, however, concern the guardianship of incapacitated persons.

One of the concerns of the majority is that a child born with a defect might be left as a ward of this state. That is true, but many mentally and physically handicapped children are wards of the state. I hardly see how this concern enters into the present situation because the adoptive parents were appointed guardians of the child and were allowed to take the child to New Jersey with them. The child has been with them since soon after his birth. I suppose they could drive back into the state and throw the child out along side the road or dump him in some emergency room. However, the same possibility exists for other children born in Arkansas, or outside Arkansas for that matter.

It is my opinion that the instant this child was born he became a resident of Arkansas and a ward of the state. Unwed mothers frequently have a desire for privacy, and the state should not use these circumstances to hinder the orderly adoption process.

We should be ever mindful and on guard in matters relating to adoption of minors. However, the fact that someone paid the doctor and hospital bill, and an attorney's fee, does not automatically cast a stigma on the adoption. The probate courts have the duty under the Arkansas statutes to require statements to be filed showing the amount paid to each and every person involving an adoption. I believe Ark. Stat. Ann. § 56-205(a) as enacted, and as it reads, is sufficient protection for young children subject to adoption and for the State of Arkansas.

I would reverse because this child unquestionably was a resident of the state of Arkansas "at the time of the filing of the

petition."