IN the MATTER OF the ADOPTION OF
Samantha Tara SAMANT, A Minor,
Annette Rose Samant, Appellant

97-1358                                          970 S.W.2d 249

Supreme Court of Arkansas
Opinion delivered June 11, 1998

*Kaye H. McLeod*, for appellant.

No response.

DAVID NEWBERN, Justice. Appellant Annette Rose Samant petitioned to adopt Samantha Tara Samant, the biological daughter of Ms. Samant's husband, Dr. Sushil Raghunata Samant, and a surrogate mother, Rebekkah Ann Nelson. The Chancellor denied the petition because Ms. Samant and Samantha were only temporarily present in Arkansas to effect the adoption with, as the Chancellor put it, "no pretense of residency or domicile." We reverse and remand because Ark. Code Ann. § 9-9-205 (Repl. 1993), which establishes jurisdiction for adoption, poses no permanent residency or domicile requirement.

Ms. Nelson entered the surrogacy arrangement with the Samants, and Samantha was born in California where Ms. Nelson resides. In a California proceeding, Dr. Samant was declared to be the father of Samantha, and Ms. Nelson and her husband relinquished any parental rights they may have had with respect to Samantha. Ms. Samant and Samantha came to Little Rock where they stayed in a hotel for thirty days prior to the filing of the adoption petition.

At the hearing on the petition, Ms. Samant and her husband made it clear that they were in Arkansas solely for the purpose of the adoption of Samantha because the California law required a six-month presence as a prerequisite to adoption and because New York, their home state, did not permit surrogacy agreements. Dr. Samant and Ms. Nelson filed "Consent to Adoption" forms on the same date as the petition.

Act 658 of 1991, entitled in part, "An Act . . . to establish Minimum Contacts With the State for Adoptions in This State; and for Other Purposes," is codified at Ark. Code Ann. § 9-9-205 (Repl. 1993). Subsection (a) deals with jurisdiction and provides:

Jurisdiction of adoption of minors:

(1) The petitioner or petitioners or legal parent or parents must have been physically present (resided) in the State of Arkansas for at least thirty (30) days immediately preceding the filing of a petition for adoption, relinquishment of parental rights, or execution of consent to termination of parental rights or adoption;

(2) Provided, however, that when the parental rights of the legal parent or parents have been relinquished or terminated more than thirty (30) days prior to the filing of an adoption petition, or the consent of the legal parent or parents is not required under other laws relating to adoption, physical presence of the petitioner or petitioners or the individual to be adopted shall be sufficient to confer subject matter jurisdiction.

The Chancellor dismissed the adoption petition for lack of jurisdiction of the subject matter. She relied on *In the Matter of the Adoption of Pollock,* 293 Ark. 195, 736 S.W.2d 6 (1987), in which we were presented with facts similar to those here and held that our courts lacked jurisdiction in such cases because none of the parties "resided" in Arkansas. The operative statute in the *Pollock* case was Ark. Stat. Ann. § 56-205(a) (Supp. 1985), which provided:

Proceedings for adoption must be brought in the court for the place in which, at the time of filing or granting the petition, the petitioner or the individual to be adopted resides or is in the military service or in which the agency having the care, custody, or control of the minor is located.

It was argued by the petitioners that the statute was a venue provision and not one controlling the court's jurisdiction. We disagreed and held that, by requiring that the petitioner or the individual to be adopted reside in this State, the General Assembly intended that adoption jurisdiction be limited to instances in which this State "has a genuine interest or contact with at least

one of the parties." *In the Matter of the Adoption of Pollock*, 293 Ark. at 199, 736 S.W.2d at 8.

The Chancellor noted Act 658 and the words now permitting jurisdiction when the petitioner has been "physically present (resided)" here for more than thirty days. She concluded, however, that, by placing the word "resided" in parentheses after the words "physically present," the General Assembly intended to require something more than physical presence as we held in the *Pollock* case.

■    We have observed the difference between the concepts of domicile and residence. *See, e.g., Davis v. Holt,* 304 Ark. 619, 623, 804 S.W.2d 362, 365 (1991); *Hogan v. Davis,* 243 Ark. 763, 766, 422 S.W.2d 412, 414 (1967); *Stephens v. AAA Lumber Co.,* 238 Ark. 842, 845, 384 S.W.2d 943, 945 (1964) ("This Court has consistently held that the words 'domicile' and 'residence' are not synonymous."); *Wilhelm v. Taylor,* 236 Ark. 85, 87, 364 S.W.2d 674, 675-76 (1963). "'Residency' means the place of actual abode, not a home which one expects to occupy at some future time." *Quinney v. Pittman,* 320 Ark. 177, 185, 895 S.W.2d 538, 542 (1995). Domicile, however, requires actual residence plus the intent to remain in a particular place. *Martin v. Hefley,* 259 Ark. 484, 486, 533 S.W.2d 521, 522 (1976).

By requiring more than physical presence in the *Pollock* decision, we went beyond the traditional definition of "residence," and, without referring to "domicile," we seemed to require it as a basis for establishing a "genuine interest" of this State in the welfare of the person to be adopted. Our basis for doing so was our general interpretation of the intent behind the Revised Uniform Adoption Act, now codified, with amendments, at Ark. Code Ann. §§ 9-9-201 through 9-9-224 (Repl. 1993 and Supp. 1997), and our observation of the tendency of states "to seek greater assurance of protection to the child being adopted." *In the Matter of the Adoption of Pollock, supra* (citing R. Leflar, *American Conflicts Law* § 239 (1977)).

■ ■ In construing a statute, we presume that the General Assembly knew of our decisions made pursuant to the preexisting law on the same subject. *McLeod v. Santa Fe Trail Transp. Co.*, 205 Ark. 225, 168 S.W.2d 413 (1943). The law has obviously been changed. The General Assembly has now effectively overruled our decision in the *Pollock* case by requiring only "physical presence." When both subsections (a)(1) and (a)(2) of Act 658 are considered, it becomes clear that the parenthetical inclusion of the word "residence" in subsection (a)(1) adds nothing to the thirty-day physical-presence requirement.

■ Our rationale in the *Pollock* case was centered upon our conclusion that the General Assembly intended that Arkansas have more than minimum contact with the parties to the petition so that courts could serve the best interest of the child to be adopted. Even if we could say that the General Assembly meant to continue the law as we declared it in the *Pollock* case by adding the word "residence" to "physical presence" in subsection (a)(1) of the statute, when we look at the entire section it becomes clear that is not so. By not including the word "residence" in subsection (a)(2) of Act 658, thus permitting adoptions based upon physical presence of the petitioner or the person to be adopted when parental rights have been relinquished or terminated more than thirty days prior to the petition or where the consent of the legal parent is not required, the General Assembly has declared either that we were wrong in our assumption of the General Assembly's intent or that its intent has changed. The addition of the word "residence" in subsection (a)(1) adds nothing beyond the traditional meaning of that word as described above.

Reversed and remanded.