OAKES *v.* OAKES.

4-9567                                    242 S. W. 2d 128

Opinion delivered July 9, 1951.

Rehearing denied October 8, 1951

*Vol T. Lindsey* and *Jeff R. Rice,* for appellant.

*George H. Jennings* and *Little & Enfield,* for appellee.

ED. F. McFADDIN, Justice. The trial court granted the wife a divorce; and in this appeal by the husband it is claimed that the wife did not have her domicile in Arkansas.

In September, 1946, Mr. and Mrs. Oakes, with their two children, moved to Benton County, Arkansas, and lived on a farm owned by Mr. Oakes' father. Mrs. Oakes had developed active tuberculosis in 1936; and on August 4, 1947, in order to enter a sanatorium in Albuquerque, New Mexico, she left Benton County, Arkansas. She took only her clothing; the furniture and household goods

were left in the home in Arkansas.[1] The two children were sent to Texas to live with Mrs. Oakes' parents, who resided in Kerrville in the summers and elsewhere in the winters.

Mrs. Oakes remained in the sanatorium in Albuquerque, New Mexico, until 1949 when she went to Kerrville, Texas, to be with her parents and children during the summer. After a short visit in Kerrville, Mrs. Oakes returned to the sanatorium in Albuequerque and came direct from that institution to Arkansas to testify in this case on October 26, 1950. She stated that she would immediately return to the sanatorium for further treatment of an indefinite duration. The two children have all the time been with Mrs. Oakes' parents, as Mr. Oakes is now, and has been for some time, confined in a psychiatric sanitarium in Oklahoma.

In 1947, Mrs. Oakes filed suit in the Benton Chancery Court, seeking a divorce on the ground of indignities. That suit was not tried because the defendant obtained an indefinite continuance. In 1948 the Court ordered Mr. Oakes to make monthly contributions to the support of his wife and children, but he is now considerably in arrears in such payments. On August 24, 1950, Mrs. Oakes filed an amendment in the pending divorce suit, seeking a divorce on the ground of three years separation (*i.e.*, the eighth ground in § 34-1202, Ark. Stats.). The answer to this amendment stated:

". . . that at the time of the filing of the amendment to said complaint the plaintiff was not a resident of the State of Arkansas and this Court does not have jurisdiction of the parties or the subject-matter."

---

[1] What disposition the husband made of the furniture and household goods does not appear. She testified:

"Q. Was it your intention to maintain Benton County, Arkansas, as your home, as your residence?

"A. That is right. I left my furniture there and everything on the farm.

"Q. Did you make any agreement with Harry (*i.e.*, Mr. Oakes) about moving that furniture and establishing any other home?

"A. No.

"Q. If there has been any moving done, have you had anything to do with it?

"A. No, I don't know whether anything is moved."

The divorce suit was tried *ore tenus* on October 26, 1950, and the Chancery Court awarded Mrs. Oakes a divorce on the ground of three years separation. As previously stated, the domicile of Mrs. Oakes is the issue controverted by appellant.

In *Cassen* v. *Cassen,* 211 Ark. 582, 201 S. W. 2d 585, we said:

"So, now, we overrule *Squire* v. *Squire,* (186 Ark. 511, 54 S. W. 2d 281) *supra,* insofar as it holds that a person who comes to this state for the purpose of obtaining a divorce and who does not have the *animus manendi* (which has always been held an essential ingredient of residence), may be said to be a *bona fide* resident of this state; and by '*bona fide* residence,' we mean the same as domicile. We quote from, and adopt as our own and as ruling in this state, the language of the United States Supreme Court in *Williams* v. *North Carolina,* 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366:

" 'Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicile. *Bell* v. *Bell,* 181 U. S. 175, 21 S. Ct. 551, 45 L. Ed. 804; *Andrews* v. *Andrews,* 188 U. S. 14, 23 S. Ct. 237, 47 L. Ed. 366. The framers of the Constitution were familiar with this jurisdictional prerequisite, and since 1789 neither this court nor any other court in the English-speaking world has questioned it. Domicile implies a *nexus* between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance. The domicile of one spouse within a state gives power to that state, we have held, to dissolve a marriage wheresoever contracted.' "

It is unquestioned that Arkansas was the domicile of Mrs. Oakes before she went to the sanatorium in New Mexico in August, 1947. Has she lost her Arkansas domicile? In *State* v. *Red Oak Bank,* 167 Ark. 234, 267 S. W. 566, we said:

"The intent to abandon one's domicile[2] and take up another must be ascertained from all the facts and circumstances in any particular case."

And we quoted from 9 R. C. L. 452:

" 'To effect a change of residence or domicile, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place or jurisdiction, with the intention of making the last-acquired residence a permanent home.' "

Our holding in the foregoing case is in accord with the authorities generally. In 17 Am. Jur. 600,[3] the holdings are summarized:

"In other words, to effect a change of domicile from one locality, state or country to another, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place or jurisdiction, with the intention of making the last acquired residence a permanent home. Moreover, the acts of the person must correspond with such purpose. The change of residence must be voluntary; the residence at the place chosen for the domicile must be actual; and to the fact of residence there must be added the *animus manendi*. The mere intention to acquire a new domicile, without the facts of an actual removal and an actual residence in the new locality, avails nothing, neither does the fact of removal without the intention.

"The rule is well settled that a domicile once established continues until it is superseded by a new domicile, and that the old domicile is not lost until a new one is acquired. This follows from the proposition that everyone must at all times have a domicile somewhere."

In the light of the foregoing, we cannot find in this record any evidence that Mrs. Oakes has acquired a new

---

[2] Some of our more recent cases on domicile are: *Central Ins. Co.* v. *Friedman*, 213 Ark. 9, 209 S. W..2d 102, 1 A. L. R. 2d 557, and *Mo. Pac.* v. *Lawrence*, 215 Ark. 718, 223 S. W. 2d 823.

[3] To the same general effect, see also Leflar "Conflict of Laws," Sec. 13.

domicile. Her removal to New Mexico was entirely for reasons of health; and in 17 Am. Jur. 608, it is stated:

"A change of residence for the purpose of benefiting one's health does not usually effect a change of domicile. Such a change is looked upon as temporary merely, even though the actual time spent in the new residence may be long."

Neither has Mrs. Oakes acquired a domicile in Texas, because since 1947 she appears to have been there on only one or two visits of short duration when she left the sanatorium to see her parents and children.

We therefore hold that Mrs. Oakes' domicile in Benton County, Arkansas, has continued because she has acquired no new domicile since 1947.

The decree is affirmed.