GRACE V. PHILLIPS ET AL *v.* IRL E. SHERROD ESTATE

5-5235                                   453 S. W. 2d 60

Opinion delivered April 27, 1970

*Harkness, Friedman & Kusin,* for appellants.

*Gordon, Gordon & Eddy,* for appellee.

CARLETON HARRIS, Chief Justice. On May 9, 1969, Irl E. Sherrod died intestate in Bowie County, Texas. Sherrod, at the time of his death, owned certain real and personal property in Perry County, Arkansas, and also some personal property in Bowie County. Sherrod was living in Perry County, Arkansas on August 13, 1963, at which time he suffered a stroke and was rendered incompetent; on September 17 of that year, a daughter, Nancy Jo Treadway, petitioned the Perry Probate Court for appointment as guardian of the person and estate of her father, and on October 1, the court, acting upon the sworn statement of Dr. Peter Thomas, a member of the staff of Missouri Pacific Hospital, found that Sherrod was incompetent;[1] that a guardian should be appointed for his person and estate, and Mrs. Treadway was named guardian. On October 30, 1963, Mrs. Ruth (Mrs. James) Miller, a resident of Texarkana, Texas, likewise a daughter of Sherrod and sister of Mrs. Treadway, petitioned the Perry County Probate Court asking that Mrs. Treadway be removed as guardian, asserting that the latter was keeping Sherrod in a place detrimental to his health and where he was unable to secure adequate medical attention, and further stating that she (Mrs. Miller) had adequate living facilities and was able to care for her father. The court held there was not sufficient evidence to justify removal of the guardian and denied Mrs. Miller's petition. In December, 1963, Mrs. Treadway left

---

[1] The Court also found that Sherrod was neither mentally or physically able to be present in Court.

Perry County, and went to Texarkana, Texas, taking Mr. Sherrod with her in order to care for him. As previously stated, Sherrod died in Bowie County on May 9, 1969, still incompetent.

On July 30, 1969, the attorneys who represented Mrs. Treadway in the guardianship, petitioned the Perry County Probate Court to appoint a personal representative. On August 12, 1969, one of the attorneys who had filed the petition, appeared before the court, and Mr. Sherman A. Kusin, an attorney of Texarkana, appeared on behalf of his clients. Mr. Kusin objected to the appointment of a personal representative until notice had been given to the heirs at law, and it was agreed that a hearing on the appointment of a domiciliary personal representative would be held on September 1, 1969. However, on August 25, Billy Williford was appointed administrator of Sherrod's estate in Bowie County, Texas, qualified on August 27, and on the same date, applied to the Perry County Probate Court for ancillary letters of administration, setting out in his petition that Sherrod had owned 250 acres of land in Perry County and had approximately $1,000 in cash in that county. The two petitioners were heard on September 1, and after introduction of exhibits, together with oral testimony, the Probate Court found that Sherrod was domiciled in Perry County, Arkansas, at the time of his death in Texas for the reason that he was removed from Arkansas by the guardian of his person and estate; that Sherrod was mentally incompetent at the time and was incapable of forming the necessary intention to abandon his domicile and establish a new one, and that his removal from the state was for the purpose of providing him with custodial care.

The court further found that it was not to the best interest of the estate that ancillary letters of administration be granted to Williford since Williford was a resident of Bowie County, Texas, while the principal estate of the deceased was located in Perry County, Arkansas, and the distance between the two

locations was such that it would incur unnecessary travel expense, and would likewise cause undue inconvenience to local creditors as well as inconvenience in disposing of the estate assets located in Perry County. J. R. Paul, who had served several terms as chancery and circuit clerk of Perry County, had also worked in the bank, and presently operated an abstract and real estate office in Perryville, was named domiciliary administrator. From the order so entered, appellants bring this appeal.

For reversal, it is asserted first that the court erred in appointing Paul domiciliary administrator of Sherrod's estate "because such action constituted a denial of full faith and credit and was a collateral attack upon a prior Texas judgment." It is also contended that the court erred in refusing to appoint Billy Williford ancillary administrator in accordance with § 62-3101 Ark. Stat. (1969 Supp.). We choose to first discuss the second point.

It is argued that Williford, as the Texas domiciliary administrator, should have been appointed under the provisions of Sub-section (3) of § 62-3101. It might first be stated that Sub-section (1) provides that a foreign personal representative, upon filing an authenticated copy of his domiciliary letters with the probate court of the county of proper venue, *may* be issued letters in this state. Sub-section (3) provides as follows:

"Upon application by a foreign personal representative for the issuance of ancillary letters, preference shall be given thereto, unless the court finds that the appointment will not be for the best interest of the estate, in which event the court may order the issuance of ancillary letters to any person eligible under the provisions of Section 70 (§ 62-2201)."

It will be noted that the statute only provides that a foreign personal representative shall be given preference unless it is found that such an appointment

would not be for the best interest of the estate. We are unable to say that the court abused its discretion in refusing to appoint Mr. Williford. While six of the seven children live in Texas,[2] all of the assets of the estate, with exception of an apparent small amount of personal property in Bowie County, are located in Perry County, Arkansas.[3] The testimony reflected that the distance from Texarkana to Perry County is approximately 200 miles (each way) and counsel for appellants mentioned that the property would likely have to be sold for the payment of debts. Of course, a person familiar with property values in Perry County and acquainted with persons who might be interested in purchasing realty or personalty, would be in a better position to handle a sale of such property than one who lived in Texas. It would also appear that only Mrs. Phillips and Mrs. Miller are particularly interested in having Mr. Williford appointed, since they are the only appellants. Whatever the status of Mr. Williford (which will be hereafter discussed) we are unable to say that the court was in error in holding that it would not be for the best interest of the estate that Williford be appointed.

As to appellants' first point for reversal, we do not agree that the action of the court in appointing Mr. Paul domiciliary administrator constituted a denial of full faith and credit to the Texas judgment. In the

---

[2]Two live at Texarkana, Texas, one at Dallas, one at San Antonio, one at Eagle Pass, one at Randolph Air Force Base, and the seventh lives at Texarkana, Arkansas, according to the petition filed by the Treadway attorneys. Mrs. Miller said that none of the heirs lived in Arkansas.

[3]Mrs. Treadway's final accounting as guardian was also approved on September 1, 1969. Appellants were, of course, present with their attorney, and counsel and parties agreed that the accounting fairly and substantially accounted for all personal property passing through the hands of the guardian. The inventory reflects the real property to be valued at $12,500; that there is $588.21 in the Perry County Bank; and personal equipment (cattle, mules, trucks, jeep, tractor, tools) amount to $3,205.40; household furniture and furnishings are valued at $100. Apparently, all of this property was in Perry County with the possible exception of the furnishings and tools. Mrs. Miller testified that there was personal property of the estate at the home of Mrs. Treadway in Bowie County.

first place, there is nothing in the record which shows that Williford was appointed domiciliary administrator by the County Court of Bowie County.[4] While, in his application for ancillary letters in Perry County, he states that he is attaching an authenticated copy of domiciliary letters, the authenticated copy of letters simply shows that Williford was granted letters of administration upon the estate of Sherrod on August 25 and qualified as required by law on August 27. The word "domiciliary" does not appear in the letters, nor is there anything in the record showing that there was a finding by the court that Sherrod was domiciled in Bowie County at the time of his death. No copy of the court's order appears.

Counsel for appellee state that they agree with appellants that full faith and credit must be given to judicial proceedings of other states, but that no attack is being made upon the validity of the Texas appointment. It is simply asserted that the fact that Williford was appointed in Texas does not mean that he should likewise be appointed in Arkansas. Of course, if Mr. Paul had only been appointed ancillary administrator, there would be no need for further discussion. Since, however, the Perry Probate Court named him domiciliary administrator, further comment is necessary.

The mere fact that Williford was first named administrator does not mean that he was a domiciliary administrator.[5]

---

[4]The term "County Court" and "Probate Court" are synonymous and denote county courts in the exercise of their probate jurisdiction. V.A.T.S. Probate Code, § 3, Sub-Section (e).

[5]In 34 C. J. S. Executors and Administrators § 989, we find:

"Where different administrations are granted in different jurisdictions, that which is granted in the jurisdiction of decedent's last domicile is termed the principal or domiciliary administration and any other administration in any other state or country is termed ancillary.

"The right of granting administration is not confined to the state or

V.A.T.S.[6] Probate Code, § 6, deals with venue for the administration of estates of decedents. This section provides that letters testamentary or of administration shall be granted, *inter alia,* as follows:

"(b) If the deceased had no domicile or fixed place of residence in this State but died in this State, then either in the county where his principal property was at the time of his death, or in the county where he died."

It is thus apparent that the mere naming of Williford as administrator of Sherrod's Estate *did not establish that Sherrod was domiciled in Bowie County*—and the order of the Perry County Probate Court did not have the effect of denying full faith and credit to a prior Texas judgment.

Though the litigation is accordingly disposed of, it might be added that it has been held that the place of domicile at the time of death is a jurisdictional question of fact which is not conclusively established by appointment of an administrator. In the Florida case of *Curtiss v. McCall,* 224 So. 2d 354, the District Court of Appeal of Florida said:

"The issuance of the letters of administration is prima facie evidence that the court adjudicated its jurisdiction, but the full faith and credit clause of the Federal Constitution does not preclude a court in another state from investigating and determining the

---

country in which decedent last dwelt, but it is very common and often necessary for administration to be taken out elsewhere. Where different administrations are granted in different jurisdictions, that which is granted in the jurisdiction of decedent's last domicile is termed the principal or domiciliary administration, and any other administration granted in any other state or country is termed 'ancillary,' and this without regard to which is granted first."

Of course the petition for administration was first filed by counsel for appellee in the Perry Probate Court, but this fact has no legal significance.

[6]Vernon's Annotated Texas Statutes.

question of the decedent's domicile at the time of death provided the party raising the issue is not estopped by the doctrine of res judicata by having previously unsuccessfully contested the issue in the court of another state. The record before this Court does not reflect any contest of the issue of residence or domicile ever raised in either state."

In *Lewis* v. *United Order of Good Samaritans,* 182 Ark. 914, 33 S. W. 2d, 53, though not involving appointment of administrators, we made a similar comment relative to jurisdiction:

"There is no conflict in the authorities as to the above statement of the law. It will however be observed that the foreign judgment is placed on the same footing as domestic judgment as regards the merits of the claim, but 'the clause of the Federal Constitution which requires full faith and credit to be given in each State to the records and judicial proceedings of every other State applies to the records and proceedings of courts only so far as they have jurisdiction, and the courts of one State are not required to regard as conclusive any judgment of the court of another State which had no jurisdiction of the subject or of the parties. It follows therefore that the jurisdiction of a court rendering a judgment or decree is always open to inquiry under proper averments, where its conclusiveness is questioned in a court of another State, and when a defendant is sued in the court of his domicile on a judgment obtained against him in another State he may show that the court of such other State did not have jurisdiction to render the judgment against him.' "

It will be remembered that the Perry County Probate Court entered an order on October 1, 1963, finding Sherrod incompetent, and this at a time when 'no one questions but that Sherrod was a resident of, and domiciled, in this state. We know that Sherrod was still incompetent at the time of his death and this fact was testified to by Mrs. Miller; the guardianship was also still in effect, and in fact, as previously men-

tioned, the final settlement of the guardian, Mrs. Treadway, was approved on September 1, 1969, the court directing that the assets of the estate then be turned over to Mr. Paul.

We have held that to effect a change of domicile from one locality or state to another, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it and there must be a new domicile acquired by actual residence in another place or jurisdiction, with intent of making the last acquired residence a permanent home. *Weaver* v. *Weaver*, 231 Ark. 341, 329 S. W. 2d, 422, and cases cited therein. Here, there is no showing that there was any intention on the part of Sherrod to establish a domicile in Texas; to the contrary, Sherrod had been held incompetent before he was taken to Texas in 1963 and the record reveals no change in that condition prior to his death in 1969.

Affirmed.