Dwain MARTIN *v.* Charles E. HEFLEY

75-276                                    533 S.W. 2d 521

Opinion delivered March 8, 1976

*Adams & Covington,* for appellant.

*Thomas A. Martin Jr.,* for appellee.

ELSIJANE T. ROY, Justice. In 1975 the Deer School District of Newton County, Arkansas, held a regular election to choose a school board member. Appellant Dwain Martin and appellee Charles Hefley were candidates. The Newton County Election Commissioners certified appellee Hefley as the winner with a 243 vote total for him and 242 votes for Martin. Appellant Martin filed suit challenging the validity of certain votes for Hefley and questioning Hefley's right to hold office. Appellee Hefley cross-complained contesting certain votes received by Martin.

At trial below the court ruled invalid two votes for appellee and one vote for appellant, leaving 241 legal votes for each party, and declared, pursuant to Arkansas statutes, a special election should be held to resolve the tie. From that decision comes this appeal.

Appellant contends the court erred in counting the vote of Sandra Hefley Carter. Mrs. Carter's vote was cast for

appellee, and appellant argues that Mrs. Carter was not a resident of the Deer School District at the time of the election because she had married two months before the election. Appellant bases this argument on his contention that Mrs. Carter, upon marrying, immediately assumed the domicile of her husband who was not a resident of the Deer School District area.

Mrs. Carter's testimony was that prior to marriage she had lived with her parents in the Deer School District and it was the only place she had ever registered to vote. She further testified that she and her husband had not established a home but that both lived with his parents part of the time and with her parents part of the time. Thus the rule that the wife assumes the domicile of her husband upon marriage finds no applicability in this instance. *Bruce* v. *Bruce,* 176 Ark. 442, 3 S.W. 2d 6 (1928). The action of the Carters indicates the absence of an intent to elect a permanent domicile, and intent to remain in a particular place coupled with actual residence has often been held to be the determinant of domicile. *Ellis* v. *Southeast Construction Co.,* 260 F. 2d 280 (8th Cir. 1958); *Troillet* v. *Troillet,* 227 Ark. 624, 300 S.W. 2d 273 (1957); *Phillips* v. *Sherrod Estate,* 248 Ark. 605, 453 S.W. 2d 60 (1970). Consequently we find the trial court's action correct on this issue.

Appellant Martin also submits as error the action of the court disallowing the vote of William Braden. Braden's vote was cast for appellant and was deducted by the court from his total based on its conclusion that the statutory provision regulating absentee voting had not been strictly complied with. Earl Braden, the father of William Braden, testified that he secured his son's ballot in order to forward it to him since young Braden was attending school at Arkansas Tech at the time the election was held. Earl Braden stated that he did not sign for the absentee ballot because the officials advised none were available. Two regular ballots (one for his daughter-in-law[1]) were given him, and he was told that by the clerk's marking "absentee" across the top they would be counted as legitimate ballots.

---

[1]The vote of the daughter-in-law was disallowed by the election commission.

Ark. Stat. Ann. §§ 3-904 and 3-905 (Supp. 1973) are quite specific in delineating the procedure which must be followed in qualifying to register an absentee vote. § 3-904 begins:

> Applications for absentee ballots may be made in one of the following three (3) ways, *in no other manner,* and then only on the form set out in this Act ]§§ 3-101 — 3-1306]. (emphasis supplied)

The statute then provides that applications can be made in person, by mail or by delivery of the absentee form to the County Clerk by the elector, husband, wife, son, daughter, sister, brother, father or mother of the applicant. § 3-905 requires that applications for absentee ballots ". . . shall be made *only* on the form furnished by the County Clerk . . ." (emphasis supplied), and incorporates the format of the form to be so furnished. Amendment 51 of the Arkansas Constitution provides in § 13(d) that:

> . . . [T]he Permanent Registrar shall determine that the signature on the application for absentee ballot is identical with the signature appearing on the voter's Affidavit of Registration before mailing or passing out an absentee ballot. * * *

This court cannot view lightly specific constitutional as well as statutory requirements. Since no application form was provided no signature comparison could have been made by the permanent registrar. Thus there was no compliance with Constitutional Amendment 51, § 13(d).

In *Bingamin v. City of Eureka Springs,* 241 Ark. 477, 408 S.W. 2d 607 (1966), we stated:

> Suits in election contests frequently show irregularities, and Amendment 51, adopted comparatively recently by the people, contains provisions aimed at correcting this situation. It is necessary that these provisions of the amendment, and the statutes referred to, relating to the duties of voters in applying for, and casting, absentee ballots, be strictly complied with.

Therefore, we find the trial court was not in error in holding William Braden's vote invalid.

Appellant's final contention is that the court erred in ruling that it was without jurisdiction to determine whether appellee was qualified to hold public office. Appellant bases this contention on the fact that appellee was convicted of burglary and given a two year suspended sentence, a crime he argues falls within the ambit of Article 5, § 9 of the Arkansas Constitution. § 9 states:

> No person hereafter convicted of embezzlement of public money, bribery, forgery or other infamous crime shall be eligible to the General Assembly or capable of holding any office of trust or profit in this State.

The court found that the issue of whether Charles Hefley was legally competent to hold office should be determined quo warranto and could only be raised by the attorney general, prosecuting attorney *or one entitled to the office*. The court ruled that appellant was not entitled to the office and was therefore precluded from bringing an action to determine appellee's eligibility.

Ark. Stat. Ann. § 34-2203 (Repl. 1962) outlines the method by which usurpation of office or franchise may be redressed. Relevant to appellant's position is language therein requiring that proceedings instituted against a usurper be initiated by "the party entitled to the office or franchise." Appellant can lay no claim to having received more votes than appellee, for even after the revised count conducted by the court each party received an equal number of votes. Therefore, appellant does not qualify as a person authorized to bring suit under the statute.

Furthermore, appellee received a suspended sentence. This type of sentence is insufficient to obviate his right to seek and hold the office. *State Medical Board* v. *Rodgers,* 190 Ark. 266, 79 S.W. 2d 83 (1935); *May* v. *Edwards,* 258 Ark. 871, 529 S.W. 2d 647 (1975). Consequently the trial court's holding was correct on this point.

Appellee, by way of cross appeal, alleges error below in the court's declaring Ray Proctor's vote invalid because of non-residency. Proctor testifed that, at the time of the election, he was staying with his family at Mossville, Arkansas, which is in the Deer School District. He stated he was living there because he had been "laid-off" from his employment in Fayetteville, which is located in Washington County. He previously had been living in Elkins, also in Washington County, for two or three years prior to being "laid-off". He owned a mobile home and paid taxes there. At the time of trial he had resumed employment in Washington County. From the evidence we cannot say that the trial court erred in declaring his vote invalid for failure to meet residency requirements. A fact question was presented as to his residence for voting purposes, and the court could justifiably conclude that he had relinquished voter status in the Deer School District area.

The validity of the vote of Ertle Hicks was questioned also as to residency. Hicks' testimony discloses that he owns a home in Deer, receives his mail there and alternates two or three times a week staying in Jasper with his wife and in Deer on his farm. Here again is a factual determination for the court, and we find no error in its conclusion. *Charisse v. Eldred*, 252 Ark. 101, 477 S.W. 2d 480 (1972).

Since the record discloses substantial evidence to support the judgment of the trial court, it is affirmed.

HARRIS, C.J., and FOGLEMAN, J., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I concur in all of the majority opinion except that part relating to the vote of William Braden. My disagreement is based upon appellant's argument, which is totally disregarded by the majority. In my opinion, it is valid, and I cannot understand why it does not dictate a different result. Appellant argues that a voter cannot be disfranchised solely by the reason of irregularities or improper action of election officials.

William Braden complied with the absentee voting requirements as fully as he could, given the situation resulting

from the action or inaction of the county board of election commissioners and the county clerk. His vote was counted by the election officials. It was not shown or even alleged that he was not a registered voter. The circuit court held his ballot invalid, saying that William Braden failed to comply with provisions of the Arkansas statutes setting forth the method for making application and voting absentee. The testimony shows that Earl Braden, William Braden's father, went to the county clerk's office for the purpose of obtaining an absentee ballot for his son, a college student at "Arkansas Tech," on three different occasions. The clerk told the senior Braden that he had no absentee ballot material, but finally marked an official ballot with the word "absentee" across the top and delivered it to the father, assuring him that this ballot would be legal in every respect.

There was a presumption that this vote, since it was accepted and counted by the election officials was valid, and the burden of overcoming this presumption was upon the contestant. *Letchworth* v. *Flinn*, 108 Ark. 301, 157 S.W. 402; *Webb* v. *Bowden*, 124 Ark. 244, 187 S.W. 461.

As appellee concedes, the evidence shows that no mechanism had been established for the casting of absentee ballots in this election. William Braden did not make an application for the ballot as required by Ark. Stat. Ann. § 3-904 (Supp. 1975). But that section of the statute clearly requires that the application be made *only* on the form set out in the act. That form is set out in Ark. Stat. Ann. § 3-905 (Supp. 1973). That section contains the following language:

> Applications for absentee ballots shall be made only on the form furnished by the County Clerk and the County Clerk shall supply the following form on request beginning sixty (60) days before the election.

William Braden was prevented from making this application solely because the county clerk failed to provide the necessary application form as he was required by law to do. In casting his ballot William Braden used the ballot provided him by the clerk, because the election commissioners failed to provide absentee ballots as required by Ark. Stat. Ann. § 3-902 (Supp. 1973).

It is quite true that we said, appropriately enough, that there must be strict compliance with statutory provisions governing absentee voting in *Bingham* v. *City of Eureka Springs,* 241 Ark. 447, 408 S.W. 2d 607. But it was not a failure to perform by election officials which prevented compliance by the voter in *Bingham.* There should also be strict compliance by officers conducting the election. We did not, could not, and should not, in *Bingham,* or in this case, hold that failure of election officials to perform their mandatory duties can have the effect of disfranchising any voter.

It has long been the law that neglect, misconduct or mistakes of election officials should not disfranchise qualified electors. Appellee does not quarrel with this general rule, but says: "The rule that improper actions of election officials will not invalidate a voter's ballot has no place in the area of absentee voting." He cites no authority for this statement and the reason is understandable. As a matter of fact, the authorities in Arkansas are to the contrary. In *Orr* v. *Carpenter,* 222 Ark. 716, 262 S.W. 2d 280, we had under consideration a challenge to absentee ballots in an election contest. In holding that they should be counted, we said:

> The pertinent issue here is whether legal voters are to be denied their right of franchise because they used ballots upon which the candidates' names had been placed by the use of a typewriter instead of some other form of printing and no objection to the form of the ballot is made until after the election. Even if it be conceded, without deciding, that the typing of the candidates' names is not a substantial compliance with Ark. Stats. § 3-811 as amended by §§ 3-823 and 3-826, still the appellant may not object to the validity of the election on account of such irregularity where he did not avail himself of the opportunity to have it corrected before the election was held.

This court is committed to the rule that the mistake of an officer charged with responsibilities incident to an election will not have the effect of disfranchising the voter whose evidence of the right to participate in the election was irregular. In *Henderson* v. *Gladish,* 198 Ark.

217, 128 S.W. 2d 257, we reaffirmed the following principles announced in *Jones* v. *State*, 153 Ind. 440, 55 N.E. 229, 232: "To hold that all prescribed duties of election officers are mandatory, in the sense that their nonperformance shall vitiate the election, is to ingraft upon the law the very powers for mischief it was intended to prevent. If the mistake or inadvertence of the officer shall be fatal to the election, then his intentional wrong may so impress the ballot as to accomplish the defeat of a particular candidate or the disfranchisement of a party. And it is no answer to say that the offending officer may be punished by the criminal laws, for his punishment will not repair the injury done to those affected by his acts. ***

As pointed out in *Henderson* v. *Gladish*, 198 Ark. 217, 128 S.W. 2d 257, a voter should not be disfranchised by making him the innocent victim of either a careless, designing or uninformed officer. In that case, reference was made to our constitutional provision that "no power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage." Art. 3 § 2, Constitution of Arkansas.

Since I would hold the William Braden ballot valid, I would reverse the judgment and enter judgment here for the appellant.

I am authorized to state that the Chief Justice joins in this opinion.