The Honorable Lindbergh Thomas State Representative P.O. Box 505 Grady, AR 71644-0505
Dear Representative Thomas:
You have presented the following questions for my opinion:
 (1) Was it legal for the City of Dumas' Advertising and Promotion Commission to use AP money to help with the purchase of football uniforms for the Dumas High School football team?
 (2) Is it legal for the City of Dumas to withhold from the Mayor's salary money that a legislative audit report said should be repaid to the city by the mayor?
 (3) Is it legal under A.C.A. § 14-43-401(b)(1) for the city council of a city of the first class to declare the office of mayor vacated if a newly elected mayor fails to come to work and perform the basic functions of the office of mayor?
 (4) Can a newly elected mayor in a city of the first class be removed from office upon conviction of a felony committed during a prior term, and if so, what is the procedure for obtaining his removal from office?
 (5) If a court removes a mayor from office based upon the mayor's conviction of a felony, does the mayor have the right to continue serving as mayor during an appeal?
RESPONSE
Question 1 — Was it legal for the City of Dumas' Advertising andPromotion Commission to use AP money to help with the purchaseof football uniforms for the Dumas High School football team?
I am unable to give a definitive answer to this question, because it is a matter that will depend upon certain factual considerations that I am unable to resolve. More specifically, the answer will depend upon whether the city's Advertising and Promotion Commission determined as a factual matter that the use of advertising and promotion funds to purchase high school football uniforms would promote and encourage tourism and conventions in Dumas. The commission is granted the authority to make this determination within certain limitations, as explained more fully below.
The use of advertising and promotion funds is governed by the provisions of A.C.A. § 26-75-606. That statute not only specifies certain permissible and impermissible uses of the fund (none of which applies to the use you have described), see A.C.A. § 26-75-606(a) and (b), but it also includes the following general description general of how such funds should be used:
 (4) The authorization and limitations contained in this subsection shall be reasonably construed so as to provide funds for promoting and encouraging tourism and conventions while not allowing such special revenues to be utilized for expenditures that are normally paid from general revenues of the city.
A.C.A. § 26-75-606(c)(4).
The advertising and promotion commission is expressly granted the authority to determine the use of the funds, within the parameters established by the statute. That grant of authority states:
 (2) The commission is the body that determines the use of the city advertising and promotion fund.
A.C.A. § 26-75-606(a)(2).
I have previously opined, as did my predecessor, that the advertising and promotion commission has wide discretion in determining factually whether a particular use of advertising and promotion funds falls within the permissible uses thereof as stated in A.C.A. § 26-75-606. See, e.g., Ops. Att'y Gen. Nos. 2001-031; 98-112; 97-259; 96-383. The Arkansas courts have consistently held that a body's interpretation of a statute that it is charged with administering will be given considerable deference and will not be overturned unless it is clearly wrong. See, e.g., Death Permanent Total Disability v. Brewer, 76 Ark. App. 348, 65 S.W.3d 463
(2002); Yamaha Motor Corp. v. Richard's Honda Yamaha, 344 Ark. 44,38 S.W.3d 356 (2001); Cyphers v. United Parcel Service, 68 Ark. App. 62,3 S.W.3d 698 (1999); Little Rock Cleaning Sys. Inc. v. Weiss,326 Ark. 1007, 935 S.W.2d 268 (1996); Douglass v. Dynamic Enters., Inc.,315 Ark. 575, 869 S.W.2d 14 (1994). Thus, if the Dumas Advertising and Promotion Commission determined factually that the use of advertising and promotion funds to help purchase high school football uniforms would "promot[e] and encourag[e] tourism and conventions" in Dumas, its determination will be upheld unless a court finds that determination to be clearly wrong.
Question 2 — Is it legal for the City of Dumas to withhold from themayor's salary money that a legislative audit report said should berepaid to the city by the mayor?
I cannot answer this question without knowing more facts about the situation, including the circumstances that gave rise to the conclusion stated in the legislative audit report, the original source of the amount in question, any agreements that may have been reached with the mayor, whether the mayor contests the report's conclusion, and whether any litigation has been initiated in connection with the situation.
Question 3 — Is it legal under A.C.A. § 14-43-401(b)(1) for the citycouncil of a city of the first class to declare the office of mayorvacated if a newly elected mayor fails to come to work and perform thebasic functions of the office of mayor?
It is my opinion that state law does not authorize city councils to declare a vacancy in the elective office of mayor. Rather, state law provides a procedure by which a mayor who has failed to perform the duties of office can be removed from office if he is found guilty of nonfeasance.
This procedure is set forth in by A.C.A. § 14-43-109, which states in pertinent part:
 (a)(1)(A) If the mayor or police judge, member of the city council, or any other elective officer of any city of the first class or second class or incorporated town in this state shall willfully and knowingly fail, refuse, or neglect to execute, or cause to be executed, any of the laws or ordinances within their jurisdiction, they shall be deemed guilty of nonfeasance in office.
 (B)(i) It shall be the duty of the circuit court of any county within which any officer may be commissioned and acting, upon indictment charging any such officer with nonfeasance in office, to hear and determine the charges.
 (ii) If upon hearing the charges are proved to be true, the court shall enter a judgment of record removing the guilty officer from office.
* * *
 (b)(1) Upon the entering of judgment as provided in subsection (a)(1) of this section, the office of mayor or police judge shall become vacant.
A.C.A. § 14-42-109.
The offense of nonfeasance, as described in the above-quoted statute is a criminal offense. The procedure for obtaining a judgment of nonfeasance is therefore a criminal procedure. See Ops. Att'y Gen. Nos. 2002-093; 95-187; 91-024. Accordingly, the city council does not have the authority to declare a vacancy in the mayor's office. Rather, the office will become vacant upon the court's entering of a judgment of nonfeasance against the mayor.
You specifically inquired as to whether the provisions of A.C.A. §14-43-401(b)(1) give the city council the authority to declare a vacancy in the mayor's office. It is my opinion that it does not.
That statutory section states:
 (b)(1) In case of his [the mayor's] death, disability, resignation, or other vacation of his office, the council, by vote of a majority of all its members, may appoint some other person to act until the expiration of his term or disability if the unexpired term of his office is less than six (6) months. Otherwise, an election shall be ordered in accordance with the laws of the state. A removal from the city shall be deemed a vacation of his office.
A.C.A. § 14-43-401(b)(1).
In my opinion, the above-quoted statute only gives the city council authority to appoint an acting mayor in the event of any of the listed circumstances. The reference in that list to "other vacation of [the mayor's] office" does not confer authority upon the city council to declare a vacancy, but only to appoint a replacement in the event that the mayor's office becomes vacant. As discussed above, a vacancy as a result of the mayor's failure to perform the duties of the office can only be accomplished by a court's entry of a judgment of nonfeasance against the mayor.
Question 4 — Can a newly elected mayor in a city of the first class beremoved from office upon conviction of a felony committed during a priorterm, and if so, what is the procedure for obtaining his removal fromoffice?
It is my opinion that a mayor's prior felony conviction can, under certain circumstances, render him ineligible for office. See Ark. Const., Art. 5, § 9; A.C.A. § 16-90-112(b); Ops. Att'y Gen. Nos.2002-098, 99-027. It should be noted that the question of whether a prior criminal record renders an individual ineligible for public office can be affected by matters contained in the commitment papers and other relevant documents. For example, expungements can restore eligibility. See Powersv. Bryant, 309 Ark. 568, 832 S.W.2d 232 (1992); Op. Att'y Gen. No.2002-098, and a suspended sentence is not sufficient to render an individual ineligible for public office. See Martin v. Hefley,259 Ark. 484, 533 S.W.2d 521 (1976); Op. Att'y Gen. No. 2002-098. Although an ineligible mayor with a prior felony conviction who is already holding office is a de facto officer whose acts are valid and enforceable,[1]
his ineligibility does provide a basis upon which he can be removed from office.
Three possible causes of action are available to remove an ineligible mayor from office. First, an ineligible mayor can be removed through a quo warranto proceeding, which is a common law proceeding that must be instituted by the state. See Moody v. Lowrimore, 74 Ark. 421, 86 S.W. 400
(1905).
Second, an ineligible mayor can be removed from office through a usurpation action under the provisions of A.C.A. § 16-118-105, which must be instituted by the Attorney General.[2] The Arkansas Supreme Court has held that de facto officers are "usurpers" within the meaning of the usurpation statute and can therefore be removed under its authority. SeeLooper v. Thrash, 334 Ark. 212, 972 S.W.2d 250 (1998).
Finally, a taxpayer may institute an "illegal exaction" lawsuit under the provisions of Ark. Const. art. 16, § 13, seeking to protect the city's revenue, to enjoin the mayor from serving, or to have the mayor declared ineligible to serve. See Harvey v. Ridgeway, 248 Ark. 35, 450 S.W.2d 281
(1970); Starnes v. Sadler, 237 Ark. 325, 372 S.W.2d 585 (1963); Jones v.Clark, 278 Ark. 119, 644 S.W.2d 257 (1983); White v. Hankins,276 Ark. 562, 637 S.W.2d 603 (1982); Martindale v. Honey, 259 Ark. 416,533 S.W.2d 198 (1976). Although a taxpayer lawsuit of this nature would not technically have the effect of ousting the mayor, it could have this practical effect. For a discussion of this issue, see Wills,Constitutional Crisis: Can the Governor (Or Other Officeholder) BeRemoved From Office In a Court Action After Being Convicted of aFelony?, 50 Ark. L.R. 221 (1997).
The city's course of action in the situation you have described must turn largely on the specific facts of the case, and should be taken in consultation with the city attorney.
Question 5 — If a court removes a mayor from office based upon themayor's conviction of a felony, does the mayor have the right to continueserving as mayor during an appeal?
I am unable to answer this question, because the answer will depend on certain contingent factors, including the particular form of action that is pursued against the mayor, the language of the court's final order in the matter, and whether the mayor in question makes the appropriate filings that are necessary to effect a stay of the judgment pending the appeal, pursuant to the various applicable Arkansas rules of procedure.But see Campbell v. State, 300 Ark. 570, 781 S.W.2d 14 (1989) (county judge subject to removal from office upon conviction of felony by lower court, and prior to exhaustion of appeal).
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] For a discussion of this issue, see Op. Att'y Gen. No. 2000-008.
[2] Usurpation actions against county officers or franchises must be instituted by the prosecuting attorney or the person entitled to the office in question. A.C.A. § 16-118-105(b).