Bervie LAWRENCE *v.* Delma SULLIVAN

CA 04-398

205 S.W.3d 168

Court of Appeals of Arkansas
Opinion delivered March 9, 2005

*John Adam Harkey*, for appellant.

*Daggett, Donovan, Perry & Flowers, PLC*, by: *Jim Pat Flowers*, for appellee.

JOHN B. ROBBINS, Judge.  Appellant Bervie Lawrence brings this appeal following the trial court's determination that her father, decedent Willie John Balentine, was a resident of Lee County, Arkansas, for purposes of the administration of his estate. For reversal,

appellant argues that the trial court erred in determining that the decedent was residing in Lee County at the time of his death. We reverse and remand.

The decedent executed a will in August 1997 in which he acknowledged that at that time he was a resident of Lexa, Arkansas (Lee County), and provided for the distribution of his estate equally among his three children, appellant Bervie Lawrence, appellee Delma Sullivan, and Hugh John Balentine. The will further provided that appellant be appointed executrix. The decedent was born in Stone County, but he moved to Lee County as a young man in 1945. Mr. Balentine raised his family in Lee County and owned a residence there. Due to his declining health, Mr. Balentine moved in with his daughter, appellee Delma Sullivan, at her Lee County home in March 1998. The relationship between Mr. Balentine and his daughter Delma soured during the year he lived with her, and by the spring of 1999, Delma insisted that he move in with appellant at her home in Stone County. He took only a few personal belongings with him because appellant's house could not accommodate more. Also in the spring of 1999, Mr. Balentine deeded his acreage and house in Lee County to his three children, but he left his truck and the majority of his personal belongings there. Mr. Balentine lived with appellant for more than three years, until he passed away in a Stone County hospital at the age of ninety-two on October 10, 2002.

Appellee filed a petition to probate their father's will in Lee County and requested to be named the executrix of the estate. Appellant filed a petition to dismiss alleging that their father had not resided in Lee County since 1999 and that Lee County was not the proper venue. After hearing testimony on the matter, the trial court determined that Lee County was the proper venue because (1) Mr. Balentine would have returned to Lee County to live had his health permitted; (2) Mr. Balentine owned no real property in Lee County at his death, but he was to receive rental income from the property; and (3) Mr. Balentine's household furniture, clothes, quilts, truck and personal bank account remained in Lee County. This appeal followed.

Appellant argues that the trial court failed to recognize the distinction between "residence" and "domicile" under Ark. Code Ann. § 28-40-102 (Repl. 2004). We must agree. Arkansas Code Annotated section 28-40-102(a)(1) (Repl. 2004) provides that the venue for the probate of a will and the administration of a decedent's estate is the county where the decedent resided at the

time of his or her death. Under our case law, the distinction between the terms "domicile" and "residence" is often subtle; however, our supreme court has consistently held that the terms are not synonymous. *Leathers v. Warmack*, 341 Ark. 609, 19 S.W.3d 27 (2000).

■ Venue refers to the geographic area, *i.e.*, the county or district, where an action is brought to trial. *Meny v. Norris*, 340 Ark. 418, 13 S.W.3d 143 (2000). Whether venue is appropriate in a particular county is a matter of law. *Two Bros. Farm, Inc. v. Riceland Foods, Inc.*, 57 Ark. App. 25, 940 S.W.2d 889 (1997). The venue provision of the statute is mandatory. *Smith v. Rudolph*, 221 Ark. 900, 256 S.W.2d 736 (1953).

■ Our supreme court explained in *Goodwin v. Harrison*, 300 Ark. 474, 479, 780 S.W.2d 518 (1989), that "residence" means "the place of actual abode, and not an established domicile or home to which one expects to return and occupy at some future date." *Id.* citing to *Norton v. Purkins*, 203 Ark. 586, 157 S.W.2d 765 (1942). After a thorough discussion of the topic, the *Goodwin* opinion stated in summation that "the word 'residency' as used in the venue statute means just that; it does not mean domicile." *Id.* at 481. Residence denotes only the act of residing. *See Leathers v. Warmack*, 341 Ark. 609, 19 S.W.3d 27 (2000). Although a person can have several residences at one time, only one of those homes can be the person's domicile. *See id.*

■ ■ Domicile is of broader meaning than residence. *Missouri Pacific R.R. Co. v. Lawrence*, 215 Ark. 718, 223 S.W.2d 823 (1949). Domicile, once acquired, is retained by the mere intention not to change it. *Id.* Intention is far more relevant to the determination of domicile than residence. *See Davis v. Holt*, 304 Ark. 619, 804 S.W.2d 362 (1991). For example, a change of residence for the purpose of benefitting one's health does not usually effect a change of domicile. *Oakes v. Oakes*, 219 Ark. 363, 242 S.W.2d 128 (1951). The *Oakes* holding was reiterated by our supreme court in *Morris v. Garmon*, 285 Ark. 259, 686 S.W.2d 396 (1985), noting the distinction between domicile and residence. In *Davis v. Holt, supra*, the supreme court attempted to set forth a working definition of "residence" as:

> [A]n established abode, fixed permanently for a time for business or other purpose, although there may be an intent existing all the while to return . . . at some time or other to the true domicile; but

> so difficult is it found to provide a definition to meet all the varying phases of circumstance that the determination of this question may present, that the courts say, that, subject to the general rule, each case must be decided on its own state of facts.

*Davis v. Holt*, 304 Ark. at 624.

▊ As applied to the present appeal, Mr. Balentine may well have been domiciled in Lee County, but that is not the relevant query. The venue statute mandates that the probate action be heard where the decedent "resided at the time of his death." The facts were not in dispute, such that there were no credibility determinations to be made. The dissenting judges' reliance on *Morris v. Garmon, supra,* is misplaced given that *Morris v. Garmon* acknowledged that the decedent had changed her residence in order to accommodate her ill health, but had not effected a change in domicile. We agree with the dissenting judges that *Morris v. Garmon, supra,* is "factually akin" to the present appeal, but its holding supports reversal. We hold that Mr. Balentine may have had more than one residence, but he could only reside in one place at the time of his death, which was in Stone County.

We reverse and remand.

BIRD, VAUGHT, and ROAF, JJ., agree.

GLADWIN and NEAL, JJ., dissent.

OLLY NEAL, Judge, dissenting. I disagree with the majority's determination that, for purposes of the probation of his will and the administration of his estate, Willie John Balentine was a resident of Stone County at the time of his death. As the majority states, Arkansas Code Annotated section 28-40-102(a)(1) provides that the venue for the probate of a will and the administration of a decedent's estate is the county where the decedent resided at the time of his or her death.

A person's "residence" is the place of actual abode, not a home that a person expects to occupy at some future time. *Leathers v. Warmack,* 341 Ark. 609, 19 S.W.3d 27 (2000). Our supreme court has defined "place of abode" as "something more than a place of temporary sojourning," implying a degree of permanence. *Id.* (citing *Shinn v. Heath,* 259 Ark. 577, 587, 535 S.W.2d 57, 62 (1976)). "[A] given place may be a 'place of abode' of a party, though he may be actually absent therefrom for a long period of time." *Id.* at 618, 19 S.W.3d at 34. Each case must be decided on its own facts. *Id.*

In *Smith v. Rudolph*, 221 Ark. 900, 256 S.W.2d 736 (1953), the decedent died in an automobile accident. Her ex-husband, with whom she had resided in Pulaski County, was appointed administrator of the decedent's estate in Pulaski County. The decedent's father applied for letters of administration in the Clark County probate court, alleging that at the time of his daughter's death, she was a resident of Clark County. The decedent's father also intervened in the Pulaski County proceedings, asking that the order appointing the decedent's ex-husband as administrator be vacated and set aside. The Pulaski County court so vacated. On appeal, our supreme court determined that the decedent had been a resident of Clark County at the time of her death, as "the evidence showed that at the time [of her divorce], her father sent a truck to Little Rock for her possessions and a car for her. She immediately removed everything she possessed to her father's home in Gurdon, where she lived until her death." The court provided, "Residence being a matter of intention, we hold, as indicated, that the preponderance of the testimony is not against the court's finding that [the decedent] was a resident of Clark County at the time of her death." *Smith v. Rudolph*, 221 Ark. at 902, 256 S.W.2d at 737.

On the other hand, in *Morris v. Garmon*, 285 Ark. 259, 686 S.W.2d 396 (1985), our supreme court determined that the decedent, who at the time of her death lived in a Fort Worth, Texas, nursing home, was a resident of Sebastian County for purposes of the administration of her estate. The court stated:

> With respect to the second point, we cannot say the finding as to domicile was clearly erroneous. "To effect a change of residence or domicile, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place or jurisdiction, with the intention of making the last-acquired residence a permanent home." The intent to abandon one's domicile and take up another must be ascertained from all the facts and circumstances in any particular case.
>
> Here, the decedent was a long time resident of Ft. Smith. After her fall there was no one to care for her in her home so she was moved to nursing homes, first to Oklahoma, then to Texas. While in the Ft. Worth nursing home, she fell again, prolonging her convalescence in Ft. Worth.

After Mrs. Morrison was moved to Oklahoma, and thereafter in the Texas nursing home, her home in Ft. Smith was kept in a state of readiness for her return. None of the furniture was removed, utilities were kept on, her car was parked in the carport and the yard was regularly maintained, all with her knowledge and approval. She maintained her membership in the First United Methodist Church of Ft. Smith and on numerous occasions expressed to her grandchildren and to neighbors a steadfast hope of returning to her home in Ft. Smith — to be with friends, and to engage in normal activities. Although there was evidence of a contrary intent, we cannot say the finding of the probate judge was clearly erroneous.

Our holding in *Oakes v. Oakes*, [219 Ark. 363, 242 S.W.2d 128 (1951)], is instructive. Mrs. Oakes, an Arkansas domiciliary, developed tuberculosis and entered a sanitarium in New Mexico in 1947. She took only her clothing, leaving her furniture and household goods in her home in Arkansas. Her two children went to live with grandparents in Texas. She returned to Arkansas three years later to testify in the divorce case she had filed against her husband. She told the court she planned to return to the sanitarium for an indefinite duration. We found no evidence that Mrs. Oakes had acquired a new domicile and added: "A change of residence for the purpose of benefiting [sic] one's health does not usually effect a change of domicile. Such a change is looked upon as temporary merely, even though the actual time spent in the new residence may be long."

*Morris v. Garmon*, 285 Ark. at 262-263, 686 S.W.2d at 398 (internal citations omitted).

In the instant case, the decedent did not take everything he possessed to Stone County as in *Smith v. Rudolph, supra*. He left Lee County not because he intended to make Stone County his residence, but because he could not cook or bathe himself, placing this case factually akin to *Morris v. Garmon, supra*. Prior to his move to Stone County, the decedent did these things with the assistance of appellee until their relationship soured. Thereafter, from April 1999 until his death, the decedent was a boarder in appellant's home in Stone County, Arkansas. The decedent took with him only a few of his belongings, including a few clothes, some pictures, his Bible, shotgun, phonebook, and fishing equipment. He left his home in Lee County in a state of readiness for his return. None of the furniture was removed and his car remained

parked in front of his home. He even maintained a bank account in Lee County. Bearing these facts in mind, the decedent went to Stone County because of health concerns, and this move did not effect a change of his residency from Lee County.

I am authorized to state that Judge Gladwin joins me in this dissent.