## Laurie MARTIN *v.*
## SIMMONS FIRST TRUST COMPANY

07-93                                              268 S.W.3d 304

### Supreme Court of Arkansas
### Opinion delivered November 15, 2007

*Mary Thomason,* for appellant.

*Ramsay, Bridgforth, Harrelson and Starling, LLP,* by: *Anthony A. Hilliard,* for appellee.

JIM HANNAH, Chief Justice. Appellant Laurie Martin appeals the order of the Union County Circuit Court finding that it is the proper venue to probate the estate of Martin's mother, Mary Ann Daley. On appeal, Martin contends that the Union County Circuit Court is not the proper venue for the probate of Daley's estate because at the time of Daley's death her residence was in Ventura County, California, and she had no intent of ever returning to Arkansas. The court of appeals certified this case to this court as one involving an issue of first impression. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1). We find no error and, accordingly, we affirm.

In April 2005, Martin, Daley, and Daley's brother, Robert Decker, appeared before the same circuit judge in a guardianship proceeding. The circuit judge determined that Daley, who was then residing at the Beverly Nursing Home in El Dorado, was

incompetent to manage her affairs. By order of the circuit court, Decker was appointed to be guardian of the person, over Martin's objection. A separate guardian of the estate, a financial institution in Arkansas, was also named. The guardianship order recited that Decker had secured for Daley a private room in a nursing home in Omaha, Nebraska, where he resided. The order also stated that the circuit court had authorized Martin to take Daley to California for her grandchild's high school graduation. The circuit court noted that Martin had given the court assurances that she would comply with the orders of the court. Finally, the court directed Martin to consult with Decker about appropriate arrangements for the transportation of Daley to Omaha and to assist in the performance of those travel plans.[1]

In April 2005, after the guardianship hearing, Martin moved Daley from Arkansas to California. During the time that Daley spent in California, Martin had her placed in a nursing home there and helped her obtain a California senior-citizen's identification card. Daley ultimately died in California on February 27, 2006.

On March 16, 2006, Martin filed a petition to probate Daley's estate, intestate, in Ventura County, California. Thereafter, on March 23, 2006, the guardian of the estate, appellee Simmons First Trust Company, filed a petition for probate of the will and appointment of a personal representative of Daley's estate in Union County, Arkansas. Probate was opened in Union County, and Simmons First was appointed executor. On May 16, 2006, Martin filed an objection to the probate of Daley's will in Union County, arguing that California had jurisdiction of the probate of Daley's estate because Daley was a resident of California at the time of her death.

Following a hearing on the objection and a telephone deposition of Decker, the circuit court overruled Martin's objection to probate the estate of Daley in Union County. After stating that it was familiar with the parties due to prior and pending litigation regarding the guardianship and noting that the majority of the assets of the estate were within the jurisdiction of the court, the circuit court made the following findings:

---

[1] Martin subsequently appealed the order appointing Decker as guardian of the person. The appointment was affirmed by the court of appeals. *Martin v. Decker*, 96 Ark. App. 45, 237 S.W.3d 502 (2006).

The Court has read with interest the argument that decedent was a resident of California at the time of her death. That defense has been constructed in violation of the letter and spirit of the order of this Court. At the request of Laurie Martin and over the objection of Robert Decker, the Court allowed Mary Ann Daley to travel to California for a temporary visit. The specific purpose of the visit was to attend the high school graduation of a granddaughter. The duration of the visit was anticipated to be only a matter of days, depending on travel arrangements. The poor health of Mary Ann Daley and the failure of Laurie Martin to effect the transportation of Mary Ann Daley to Omaha caused the visit to extend to months. Laurie Martin did not take the necessary action to send her mother to Omaha as she had assured the Court she would. Mary Ann Daley did not have the mental competency to establish residency for herself. The indicia of citizenship were created by Laurie Martin. Laurie Martin now seeks to benefit from her misconduct by claiming residency for her mother in California and removing probate proceedings from this venue. Her claim that Robert Decker abandoned his sister in California is inconsistent with the observations and findings of this Court and a fair and reasonable reading of Robert Decker's deposition.

The fact that the petition to probate in California was filed before the one in Arkansas is not that significant and is not determinative of [the] issue. Being the first to file does not serve to validate the improper conduct of Laurie Martin in keeping Mary Ann Daley beyond a temporary visit in violation of this Court's order.

Under normal circumstances, the California court may have sufficient contacts with decedent to justify concurrent jurisdiction. However, these unique facts, the pending guardianship proceedings, and judicial economy require that jurisdiction and venue remain in Union County, Arkansas.

Martin now brings this appeal.

We review probate matters de novo on appeal, and we will not disturb the probate judge's findings absent an abuse of discretion or upon findings that the judge's decision was clearly erroneous. *Reynolds v. Guardianship of Sears*, 327 Ark. 770, 940 S.W.2d 483 (1997). We begin by noting that Martin couches her argument on appeal in terms suggesting that Ark. Code Ann. § 28-40-102 (Repl. 2004), the venue statute for probate of a will, governs the standard for determining whether a decedent's estate may be probated in Arkansas. We disagree. Generally, the principal ad-

ministration of a decedent's estate will take place in the state where the decedent was domiciled. *See, e.g., Phillips v. Sherrod Estate*, 248 Ark. 605, 610, 453 S.W.2d 60, 63 (1970); 95 C.J.S. *Wills* § 525 (2001) ("[P]rimary probate of a will should be made in the place of the testator's domicile regardless of where the testator died.") (footnotes omitted).[2] Thus, we turn to the question of where Daley was domiciled at the time of her death. We find instructive the case of *Phillips v. Sherrod Estate, supra*. There, we observed:

> [T]he Perry County Probate Court entered an order on October 1, 1963, finding Sherrod incompetent, and this at a time when no one questions but that Sherrod was a resident of, and domiciled, in this state. We know that Sherrod was still incompetent at the time of his death and this fact was testified to by Mrs. Miller; the guardianship was also still in effect[.]
>
> We have held that to effect a change in domicile from one locality or state to another, there must be actual abandonment of the first domicile, coupled with an intention not to return to it and there must be a new domicile acquired by actual residence in another place or jurisdiction, with intent of making the last acquired residence a permanent home. *Weaver v. Weaver*, 231 Ark. 341, 329 S.W.2d 422, and cases cited therein. Here, there is no showing that there was any intention on the part of Sherrod to establish a domicile in Texas; to the contrary, Sherrod had been held incompetent before he was taken to Texas in 1963 and the record reveals no change in that condition prior to his death in 1969.

*Id.* at 612-13, 453 S.W.2d at 64.

In the instant case, the original guardianship order determined that Daley was mentally incapacitated to such an extent that she was incapable of handling her personal and business affairs. In addition, the record reveals that Daley was wheelchair bound with serious memory and reasoning problems and that the circuit court's finding of incompetence was based largely on a psychological evaluation indicating a diagnosis of dementia of Alzheimer's type.

---

[2] We recognize that it is not unusual for the administration of an estate to take place in more than one state. *Phillips*, 248 Ark. at 610, 453 S.W.2d at 63 (citing 34 C.J.S. *Executors and Administrators* § 989 (1942)). In such cases, Arkansas follows the traditional rule that principal or domiciliary administration is to take place in the state of the decedent's last domicile. *Id.*

In *Phillips*, this court observed that there was no question that Sherrod was a resident of and domiciled in Arkansas at the time the guardianship order was entered and that there was no intention on the part of Sherrod to establish a domicile in Texas. Likewise, in the instant case, there is no allegation that Daley was not a resident of and domiciled in Arkansas at the time the guardianship order was entered in Union County, and there is no showing that Daley regained competency and was capable of forming the intent to establish a domicile in California. Moreover, the record is devoid of evidence to suggest that Daley was competent and able to form the necessary intent to abandon her domicile in Arkansas.[3] In addition, Martin's contention that Daley's obtaining a California identification card is evidence that she intended to make California her home is without merit because Martin presented no evidence to suggest that Daley possessed the capacity while in California to express her intent. For these reasons, we cannot say that the circuit court clearly erred.

Affirmed.

IMBER, J., concurs.

ANNABELLE CLINTON IMBER, Justice, concurring. I concur in the result but write to express my disagreement with the majority's reliance on the concept of domicile in determining which of two states is the proper forum for the probate of an estate. Specifically, the majority's reliance on *Phillips v. Sherrod Estate*, 248 Ark. 605, 453 S.W.2d 60 (1970), is misplaced. In *Phillips*, we interpreted Texas statutes, which operate in terms of domicile. *Id.* Conversely, a review of Arkansas statutes reveals that a standard of residence applies in determinations of forum for the administration of estates. The probate statutes repeatedly refer to residence as opposed to domicile.

---

[3] We note that at the guardianship hearing in April 2005, Daley was unaware that, at that time, she was living at the Beverly Nursing Home in El Dorado. Rather, she testified that she lived in Little Rock and "just knew people" at the nursing home. *Martin v. Decker*, 96 Ark. App. at 48, 237 S.W.3d at 504. Further, Decker stated in deposition testimony that when he spoke to Daley out in California, "she still thought she was in Arkansas. Her mental state was that. She never really, even when she was there, knew that she was not in Arkansas in my talking to her."

The Arkansas venue statute dictates the proper forum for the administration of an estate. The statute reads as follows, in pertinent part:

> (a) The venue for the probate of a will and for administration shall be:
>
> (1) In the county in this state where the decedent *resided* at the time of his or her death;
>
> (2) If the decedent did not *reside* in this state, then in the county wherein is situated the greater part, in value, of the property of the decedent located in this state;
>
> (3) If the decedent had no *residence* or property in this state, but died in this state, then in the county in which he or she died; and
>
> (4) If the decedent had no *residence* or property in this state and died outside of this state, then in any county in which a cause of action may be maintained by his or her personal representative.

Ark. Code Ann. § 28-40-102(a) (Repl. 2004) (emphasis added).

Furthermore, the Arkansas statute dealing with time limits for probate states that, to the extent that it relates to real property, the will of a *nonresident* admitted to probate in another jurisdiction may be admitted here without regard to the time limit. Ark. Code Ann. § 28-40-103(c)(1) (Repl. 2004). A petition for probate of a will or for the original appointment of a general personal representative must state the *residence* of the decedent and, if the decedent did not *reside* in this state at the time of death, must provide a general description of the property located in each county. Ark. Code Ann. § 28-40-107(c)(1), (4) (Repl. 2004). The chapter dealing with ancillary administration states that "the law and procedure relating to the administration of estates of *resident* decedents shall apply to the ancillary administration of estates of *nonresident* decedents." Ark. Code Ann. § 28-42-101 (Repl. 2004) (emphasis added). It is clear from the probate statutes that residence is the applicable standard in Arkansas.

Our case law supports this conclusion. For example, as early as 1920, we held that letters testamentary and of administration are to be issued in the county in which the testator or intestate *resided*. *Groschner v. Winton*, 146 Ark. 520, 226 S.W. 162 (1920). In

addition, we have held that "the will of a *nonresident* of this state may have original probate in this state, if the testator owned property in this state which might be the subject of administration in this state, or where there was a debt or demand due the testator which required administration to collect." *McPherson v. McKay*, 205 Ark. 1135, 1138-1139, 172 S.W.2d 911, 912 (1943) (emphasis added). Several cases have expressed the importance of residence in determining venue. *See Lawrence v. Sullivan*, 90 Ark. App. 206, 205 S.W.3d 168 (2005); *Smith v. Rudolph*, 221 Ark. 900, 256 S.W.2d 736 (1953); *Shelton v. Shelton*, 180 Ark. 959, 23 S.W.2d 629 (1930).

In short, we have never relied on domicile in determining the proper forum for the administration of an estate. Residence has always been the applicable standard. In the instant case, the circuit court found that the greater part of Mary Ann Daley's estate was located in Arkansas. Thus, I would affirm the circuit court's decision under Ark. Code Ann. § 28-40-102(a)(2).